THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CORDER, et al., | ) | |
| | ) | |
|     *Plaintiffs*, | ) | No. 10 C 01927 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| SEBASTIAN, et al., | ) | |
| | ) | |
|     *Defendants*. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Eric Corder's Motion for Relief from Judgment pursuant to Rule 60(b)(5). In 2010, the Court dismissed in part Corder's claims, after it determined that they were *Heck*-barred or collaterally estopped by Corder's state court criminal conviction. (*See* Dkt. 33). In 2023, the state court vacated Corder's criminal conviction. Now, Corder asks the Court to reinstate his initial Complaint. For the foregoing reasons, the Court grants Plaintiff's Motion [50] in part, vacating the dismissal of his false arrest claim.

## BACKGROUND

Corder filed this action in 2010 against the City of Chicago, Officer Clinton Sebastian, and Officer Donna Walsh alleging violations of Corder's constitutional rights under 18 U.S.C. § 1983 and intentional infliction of emotional distress (IIED) under Illinois law. (Dkt. 8 ¶¶ 21–34).

The facts underlying Corder's claims stem from a search of his home and his subsequent arrest. (*Id*. ¶¶ 8–20). Corder alleges the following: In March 2008, Officer Sebastian obtained a warrant to search Corder's home by knowingly submitting a false affidavit. (*Id.* ¶ 9). When executing the warrant, Officers Sebastian and Walsh entered Corder's residence "in the dead of night" without knocking or announcing their presence. (*Id.* ¶¶ 12–14). The officers found Corder,

1

threw him to the floor, and put a gun to his head. (*Id*. ¶ 17). They arrested Corder as a felon in possession of a firearm—though Corder maintains the officers never found a firearm on him. (*Id*. ¶ 18).

The state brought several charges against Corder in the Circuit Court of Cook County. (Dkt. 57-2 at 2). During his state criminal case, Corder moved to suppress evidence obtained during the search. (Dkt. 33 at 2). Corder argued that the officers had illegally obtained the warrant through a falsified affidavit and illegally executed it by failing to knock and announce their presence upon entering Corder's residence. (*Id*.) The state court denied Corder's motion. (*Id*. at 2–3). Corder pled guilty to aggravated unlawful use of a weapon and was convicted on October 5, 2009. (*Id*. at 3).

Corder initially filed his federal lawsuit in April 2010. (Dkt. 1 at 1). He alleged three claims under 42 U.S.C. § 1983, relating to Fourth Amendment violations and one IIED claim under state law. (Dkt. 8 at 5–6). Corder claimed that the officers illegally obtained and executed a warrant. (*Id*.) Corder also alleged that the officers arrested him without probable cause. (*Id*.) Finally, Corder brought an IIED claim under Illinois law alleging that the officers entered his house in the night, threw him to the ground, and held him at gun point. (*Id*. at 6–7).

In October 2010, the Court dismissed all three claims for different reasons. (Dkt. 33 at 4). First, because the state court had already heard and decided the illegal search claims, the Court ruled Corder was collaterally estopped from bringing them again. (*Id*. at 2–3). Second, the Court determined that because a favorable finding for Corder as to the false arrest claim would imply that his state criminal conviction was invalid, that claim was *Heck*-barred. (*Id*. at 3). Lastly, because Corder's Illinois tort claim fell outside of the statute of limitations, the Court dismissed it. (*Id*. at 4).

2

On February 20, 2015, the Illinois Supreme Court found that Illinois's aggravated unlawful use of a weapon statute was unconstitutional. *People v. Mosley*, 2015 IL 115872 (2015). About eight years later, on June 1, 2023, Corder learned of *Mosley*'s holding. (Dkt. 58 at 2). Two months later, Corder filed a petition for relief from judgment for his criminal conviction in state court. (Dkt. 57-1 at 2). On September 22, 2023, the state court vacated Corder's conviction. (Dkt. 57-2 at 12). On July 2, 2024—over nine months later—Corder petitioned this Court to vacate its dismissal of his civil claims. (Dkt. 50 at 1).

## **LEGAL STANDARD**

"'Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances.'" *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (quoting *Karraker v. Rent–A–Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005)). Rule 60(b)(5) permits the Court to relieve a party from a final judgment when "it is based on an earlier judgment that has been reversed or vacated[.]" A Rule 60(b)(5) motion must be made within a reasonable time. Fed. R. Civ. Pro. 60(c). And even then, a district court "has great latitude in making a Rule 60(b) decision because that decision is discretion piled on discretion." *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) (cleaned up).

## **DISCUSSION**

For Corder to prevail, he must show that his Motion (I) aligns with the Rule 60(b)(5) criteria and (II) meets Rule 60(c)'s time requirements; finally, Corder must also (III) persuade the Court to exercise its discretion in granting relief.

### I. **Rule 60(b)(5)**

"Rule 60(b)(5) calls on the court to ascertain whether a judgment is 'based' on some earlier decision" that has been reversed or vacated. *Evans v. City of Chicago*, 10 F.3d 474, 476 (7th Cir.

3

1993). Corder asserted four claims: a § 1983 false arrest claim, two § 1983 illegal search claims, and an IIED claim. We will evaluate whether each claim is "based" on Corder's since-vacated state criminal conviction in turn.

The Court dismissed Corder's false arrest claim because it was *Heck*-barred. (Dkt. 33 at 3). The holding from *Heck v. Humphrey* prevents a plaintiff from bringing a claim that would imply the invalidity of a prior criminal conviction, unless the conviction has been reversed, declared invalid, or the like. 512 U.S. 477, 486–87 (1994); *Young v. City of Bloomington, Illinois*, No. 23-1334, 2023 WL 8074288, at *1 (7th Cir. Nov. 21, 2023) (". . . under *Heck*, any civil action, regardless of the relief sought, is barred if it necessarily implies the invalidity of a criminal conviction."). In the Court's Order dismissing Corder's claims, the Court determined that if Corder prevailed in his false arrest claim in federal court, it would imply that his state criminal conviction was invalid—thus, the Court concluded that the false arrest claim was *Heck*-barred. (Dkt. 33 at 3). Because the Court's initial dismissal was "based" on a prior judgment which has now been vacated, the false arrest claim falls within Rule 60(b)(5)'s scope. *Evans*, 10 F.3d at 476.

The Court dismissed both illegal search claims on collateral estoppel grounds. Collateral estoppel bars a subsequent court from rehearing issues that were litigated and decided in a prior proceeding. *See Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). Because the state court previously ruled on these Fourth Amendment issues and Corder was making the same arguments, this Court dismissed the illegal search claims. (Dkt. 33 at 2–3). Like the false arrest claim, the Court's dismissal of the illegal search claims was "based" on the state court's since-vacated, previous judgment so, these claims also fall within Rule 60(b)(5)'s scope. *Evans*, 10 F.3d at 476.

Lastly, Corder asks the Court to reopen his IIED claim. In contrast to Corder's three previous claims, the Court dismissed the tort claim for falling outside the statute of limitations.

4

(Dkt. 33 at 3–4). The Court made this determination independent of Corder's state criminal conviction. (*Id.*); (Dkt. 57-2). Because the Court dismissed the IIED claim without reference to a previously vacated decision, Corder cannot rely on Rule 60(b)(5) to resurrect the claim.

Corder argues that the Court erred in its initial dismissal of his IIED claim. (Dkt. 58 at 8). Specifically, Corder claims that his IIED covered both the events surrounding his arrest and his ongoing detention at the correctional center, and therefore, the statute of limitations had not run when the Court dismissed it. (Dkt. 58 at 8–9).

Corder's argument is untimely. Rule 60(b) is not a substitute for an appeal and courts should not use it to remedy legal or factual errors. *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 667 (7th Cir. 2014). Corder could have pursued this argument on direct appeal, but did not do so. Rule 60(b) does not allow him a second opportunity to litigate the matter. *See Chambers v. United States*, 866 F.3d 848, 852 (7th Cir. 2017) (explaining that Rule 60(b) is not a substitute for a direct appeal). The Court denies Corder's motion to reopen his IIED claim.

## II.     Rule 60(c)

Next, the Court must evaluate whether Corder's Motion was "made within a reasonable time." *Fed. R. Civ. P. 60(c)*. There is no bright-line rule for what amount of time is reasonable. *Sudeikis v. Chicago Transit Auth.*, 774 F.2d 766, 768 (7th Cir. 1985). Instead, "[w]hat constitutes a 'reasonable time' depends on the facts of each case. A court considers 'the interest in finality, the reasons for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and the consideration of prejudice, if any, to other parties." *Lundeen v. Frye*, 666 F. App'x 539, 541–42 (7th Cir. 2016) (quoting *Ingram v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 371 F.3d 950, 952 (7th Cir. 2004)). Because the factors weigh differently for Corder's illegal search and false arrest claims, the Court will assess them each separately.

5

### A. Corder's Illegal Search Claims

The Court "recognize[s] the difficulties faced by prisoners proceeding pro se." *Moor-Bey v. Delrosario*, 165 F.3d 32, at *2 (7th Cir. 1998). Courts, however, routinely find that it is unreasonable for a plaintiff to wait over three months to bring a Rule 60(b) motions—even when the plaintiff is pro se. *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986) (affirming a district court's ruling that a three-month delay without justification was unreasonable); *United States v. Lyman*, 166 F.3d 349, at *5 (10th Cir. 1998 (explaining that a pro se petitioner's eight-month delay in bringing action was unreasonable); *Smith v. Ruzzo*, No. CIV. 07-450 (JBS), 2009 WL 349162, at *3 (D.N.J. Feb. 9, 2009) (finding a pro se litigant's motion was untimely where plaintiff proffered no satisfactory justification for an eight-month delay); *see Miedzianowski v. United States*, No. 06 C 5629, 2017 WL 1954543, at *4 (N.D. Ill. May 3, 2017) ("courts within the Seventh Circuit routinely hold that delays in filing a Rule 60(b)(6) motion for over three months after judgment represent an unreasonable amount of time."). Corder took nine months to file this motion from the time he learned his conviction was vacated. That constitutes an unreasonable delay.

Corder, therefore, must present persuasive reasons why he failed to file earlier. *Ingram*, 371 F.3d at 952. He claims that his delay is justified because it took time to research, write, and file the present motion while in custody. (Dkt. 58 at 2). But Corder faced the same obstacles in filing his state court motion that he faced in filing the present motion. (*Id.*) It took him just two months to file the motion in state, but nine months to file the present motion. (Dkt. 57-1 at 2; Dkt. 57 at 13; Dkt. 50 at 1). Given that Corder faced the same constraints in filing both motions but was able to file his previous motion in one-fourth the time, his reasoning is unpersuasive.

Interests in finality and the potential prejudice against the Defendants also persuade the Court that Corder has not filed his motion within a reasonable time. As for finality, Corder's illegal search claims were dismissed with prejudice. When a claim is dismissed with prejudice it carries with it preclusive effects, meaning the door to future litigation on that matter is closed. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2367 (4th ed. 2021); *Nilssen v. Osram Sylvania, Inc.*, No. 03-CV-2962, 2022 WL 523133, at *7 (N.D. Ill. Feb. 22, 2022).

If a judgment has been final for years before a Rule 60(b) motion is filed, "the interest in finality militates" rejecting the motion unless there are persuasive reasons to do otherwise. *Ingram*, 371 F.3d at 952. The Defendants have a strong interest in the finality of a final judgment issued fifteen years ago. Given Corder's delay in filing his motion and that these issues were previously litigated in another court, Corder has not presented persuasive reasons to overlook the strong interests in the finality.

On a similar note, reopening a fifteen-year-old final judgment would likely prejudice the Defendants. The Defendants believe that witnesses will be difficult to locate, witnesses' memories will have faded, and documents may have been lost. (Dkt. 57 at 6). And though the prejudice may not have been caused by Corder's delay, it is still a relevant consideration weighing in favor of denying Corder's motion. *See Smith v. Caterpillar, Inc.*, 338 F.3d 730, 734–35 (7th Cir. 2003) (finding prejudice due to memory loss from eight years passage even without showing the memory loss was caused by the opposing party's delay).

Given the lack of persuasive reasons for the delay, the interest in finality, and the potential prejudice against the Defendants, the Court finds that Corder did not file his Rule 60(b) motion in

a reasonable time with respect to his illegal search claims. The Court denies Corder's Motion with respect to the illegal search claims.

## B. Corder's False Arrest Claim

Corder's false arrest claim presents additional considerations because it was *Heck*-barred and dismissed without prejudice. To start, Officers Sebastian and Walsh cannot claim a strong interest in the finality of the dismissal. When a court dismisses a claim without prejudice, the plaintiff may return later, "to the same court, with the same underlying claim." *Semtek Int'l Inc.*, 531 U.S. at 506. The door to future litigation is still open. *Nilssen*, 2022 WL 523133, at *7 ("The big difference is finality. A dismissal without prejudice means that the parties return to square one, as if the litigation hadn't happened."). Under *Heck*, defendants must be aware that a plaintiff could still bring a claim against them if the underlying criminal conviction is later vacated. *See* 512 U.S. at 486–87. Here, the Defendants could not reasonably rely on the finality of the Court's dismissal without prejudice because there was always the possibility the underlying criminal conviction could be overturned.

What's more, additional considerations also persuade the Court that Corder did not delay in bringing his Motion with respect to the false arrest claim. When a *Heck*-bar is lifted because the plaintiff received a favorable disposition in the underlying criminal case, the plaintiff can pursue one of two avenues for relief. If a plaintiff previously had his claim dismissed in district court, he may file a Rule 60(b) motion to seek relief from judgment. *See in re Jones*, 670 F.3d 265, 267–68 (D.C. Cir. 2012); *Robinson v. Connell*, No. 9:05-CV-1428, 2010 WL 6268444, at *2 (N.D.N.Y. Sept. 8, 2010). Alternatively, a plaintiff may re-file his complaint. *Jones*, 670 F.3d at 268.

When *Heck* applies, it delays the cause of action's accrual to the date that the underlying conviction was set aside. *Wallace v. Kato*, 549 U.S. 384, 393 (2007); *see Heck*, 512 U.S. at 489–

8

490. This means that Corder's cause of action accrued on September 22, 2023, when his conviction was vacated. (Dkt. 57-2 at 13). Section 1983 borrows the statute of limitations from state law—here, that is two years. *Hall v. Sood*, 860 F. App'x 440, 442 n.1 (7th Cir. 2021); 735 ILCS 5/13-202. Therefore, if Corder chose to re-file his complaint, he would have been subject to a two-year statute of limitations and have until September 22, 2025, to file his claim. Given that, it is hard to see how Corder's Rule 60(b) motion would be considered delayed when he could still refile the case to achieve the same result.

Considering these additional facts, the Court finds that Corder's motion with respect to his false arrest claim was brought within a reasonable time.

### III. The Court's Discretion

The Court has great discretion in granting a Rule 60(b) motion. *See Bakery Mach. & Fabrication, Inc.*, 570 F.3d at 848. Courts can decline to grant a Rule 60(b) motion when the movant fails to demonstrate that he has a meritorious claim. 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2857 (3d ed. 2024 update) ("[Courts] have prevented the needless protraction of litigation by requiring the moving party to show a good claim or defense."); *see Acosta v. DT & C Global Management, LLC*, 874 F.3d 557, 560–62 (7th Cir. 2017) (requiring movant to provide a meritorious defense in the context of a Rule 60(b)(1) motion).

To show his false arrest claim is meritorious, Corder must allege he was arrested without probable cause. *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022). Relying on *Tollett v. Henderson*, the Defendants argue that Corder waived his ability to make this showing because it would contradict his guilty plea. (Dkt. 57 at 6) (citing 411 U.S. 258, 267 (1973)).

The Supreme Court held in *Tollett* that "when a defendant pleads guilty he may not later raise claims about deprivations prior to his plea[,]" but he may challenge "the voluntary and

9

intelligent nature" of that plea. *White v. City of Chicago*, No. 17-CV-02877, 2018 WL 1702950, at *3 (N.D. Ill. Mar. 31, 2018); *Tollett*, 411 U.S. at 267. This is because a guilty plea is "an admission of factual guilt so reliable that . . . it quite validly removes the issue . . . from the case." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975).

Though *Tollett* was a habeas case, its holding has been applied to § 1983 plaintiffs who previously pled guilty, even those whose convictions were vacated. *White*, 2018 WL 1702950, at *2–3 (applying *Tollett* when underlying conviction was vacated); *In re Watts Coordinated Pretrial Proceedings*, No 19-CV-1717, 2022 WL 9468206, at *7 (N.D. Ill. Oct. 14, 2022); *Powell v. City of Chicago*, No. 17-CV-5156, 2018 WL 1211576, at *7–8 (N.D. Ill. Mar. 8, 2018). The *Tollett* doctrine, therefore, applies to Corder's false arrest claim. Corder raises several counterarguments.

First, Corder argues that because the statute was unconstitutional it cannot be enforced against him. (Dkt. 58 at 4). Recognizing that Corder waived claims through a guilty plea, however, is not the same as enforcing an unconstitutional law against him. Corder admitted in open court to the fact underlying his now-vacated conviction, and the plea prevents him from disclaiming what he previously swore. *See Menna*, 423 U.S. at 62 n.2.

Second, Corder argues that the Court cannot consider his guilty plea since the conviction has been vacated. But this proposition misunderstands the nature of a guilty plea. Guilty pleas are typically enforceable contracts where the criminal defendants waive rights. *United States v. Adkins*, 743 F.3d 176 (2014); *See Haring v. Prosise*, 462 U.S. 306, 313, 318–20 (stating that a criminal conviction carries preclusive effects and that a guilty plea carries waiver effects). Courts have even acknowledged guilty pleas can still waive arguments even if the conviction was vacated. *White*, 2018 WL 1702950, at *3; *In re Watts Coordinated Pretrial Proceedings*, 2022 WL 9468206, at *7. Corder's cited cases are inapposite because they discuss the subsequent use of vacated judgments,

10

not guilty pleas. *See Simpson v. Motorists Mut. Ins. Co.*, 494 F.2d 850 (7th Cir. 1974) (vacated declaratory judgment); *Dodrill v. Ludt*, 764 F.2d 442 (6th Cir. 1985) (vacated conviction); *Brisco v. Stinar*, No. 19-CV-7233, 2020 WL 7027719 (N.D. Ill. Nov. 30, 2020) (same).

Since a valid guilty plea would prevent Corder from succeeding on his false arrest claims, the Court must determine whether Corder's case falls within the falsified evidence exception to *Tollett* rule. The exception works like this: A guilty plea can be challenged if it was not entered into voluntarily or intelligently. *Tollett*, 411 U.S. at 267. A police officer violates due process if he manufactures false evidence against a criminal defendant that deprives the defendant of liberty in some way. *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016). If the fabricated evidence causes a defendant to give up their liberty and take a guilty plea, then the plea was involuntary and an involuntary plea does not waive claims. *Saunders v. City of Chicago*, 2014 WL 3535723, at *5 (N.D. Ill. July 11, 2014); *White*, 2018 WL 1702950, at *3; *see Tollett*, 411 U.S. at 267.

The Defendants argue that Corder cannot demonstrate his plea was based on falsified evidence and, so, his claim would be dismissed if it was reopened. As Corder's complaint currently stands, the Defendants are correct. To succeed on a motion to dismiss, the plaintiff must allege "sufficient factual matter" in the complaint to state a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all well-pleaded allegations as true and draw reasonable inferences in the plaintiff's favor. *Id.* In cases like this one, courts have been willing to infer a causality when a criminal defendant pleads that officers manufactured evidence and the they pled guilty. *See White*, 2018 WL 1702950, at *3; *Saunders*, 2014 WL 3535723, at *5. But here, Corder did not mention the guilty plea in his Complaint. (*See* Dkt. 8). The Court cannot, therefore, draw an inference that an unmentioned guilty plea was caused by fabricated evidence.

11

All that said, "[t]he federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). Courts should freely give leave to amend when justices requires. *Runnion*, 786 F.3d at 519. And "[w]hen the party is pro se, the liberal approach to amending pleadings applies with even more force." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018).

Though Corder's Complaint may not adequately allege the involuntariness of his guilty plea, Corder maintained in his briefing that the falsified evidence caused him to plead guilty. (Dkt. 58 at 5). Given the liberal approach to amending pleadings embraced by the federal rules, Corder could his amend his Complaint to allege the additional information he included in his briefs. Therefore, he has a path forward where he could succeed in overcoming the *Tollett* waiver. That is enough for the Court to find that Corder has a sufficiently meritorious false arrest claim to warrant this Court vacating its dismissal.

## **CONCLUSION**

For the reasons stated above, the Court grants Corder's Rule 60(b) Motion [Dkt. 50] in part. The Court vacates the dismissal of Corder's false arrest claim. With respect to Corder's illegal search and IIED claims, Corder's Motion is denied.

Virginia M. Kendall
United States District Judge

Date: March 28, 2025