**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CORDER et al., | ) | |
| *Plaintiffs*, | ) | No. 10 C 1927 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| SEBASTIAN et al., | ) | |
| *Defendants*. | ) | |

**MEMORANDUM OPINION & ORDER**

In 2010, Plaintiff Eric Corder first sued Chicago Police Department Officers Clinton Sebastian ("Sebastian") and Donna Walsh ("Walsh") (together, "the officers") and the City of Chicago (collectively, "the Defendants"). In that four-count lawsuit, Corder asserted three federal claims and one state law claim. (Dkt. 108). After Corder pleaded guilty in state court to a crime underlying his civil claims, Judge St. Eve dismissed all four claims, each for a different reason. (Dkt. 33). The Court dismissed three claims with prejudice, and only one claim—Corder's false arrest claim—without prejudice. (*Id.*) Several years later, the state court vacated Corder's conviction because the law under which he was convicted was found unconstitutional. (Dkt. 57-2 at 12). Subsequently, Corder filed a Rule 60(b)(5) motion, requesting that this Court allow him to reinstate his lawsuit. (Dkt 50). The Court granted his Motion as to the false arrest claim but not as to his other three claims. (Dkt. 59). On February 13, 2026, Corder filed his Second Amended Complaint, asserting eight counts against the Defendants. On April 15, 2026, the City of Chicago and Walsh filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing in relevant part that the Court should dismiss Counts II-VIII because they fall outside the scope of

the Court's 60(b)(5) Order, and that the Court should dismiss Count I because Corder fails to state a claim. (Dkt. 118). For the reasons below, the Court grants in part and denies in part the Defendants' Motion to Dismiss. [118].

**BACKGROUND**

This case started in 2010, when Plaintiff Eric Corder and former Plaintiff Elizabeth Corder sued Chicago Police Department (CPD) Officers Sebastian and Walsh, along with the City of Chicago. Corder's original complaint raised four claims: a § 1983 unlawful search claim against Sebastian (Count I), a § 1983 false arrest claim against the officers (Count II), a § 1983 illegal execution of search warrant claim against the officers (Count III), and a state law claim for intentional infliction of emotional distress (IIED) (Count IV). (Dkt. 8). On October 18, 2010, Judge St. Eve dismissed all four claims, each for a different reason. (Dkt. 33). Judge St. Eve dismissed Counts I, III, and IV with prejudice, and Count II (false arrest) without prejudice, reasoning that Count II was *Heck*-barred by Corder's state law conviction for aggravated unlawful use of a weapon. (*Id.* at 3-4); *see Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

On February 20, 2015, the Illinois Supreme Court found that Illinois' aggravated unlawful use of a weapon statute was unconstitutional. *People v. Mosley*, 2025 IL 115872 (2015). After learning about *Mosley*, Corder filed—and the state court granted—a petition for relief from judgment for his criminal conviction. (Dkt. 57-1 at 2, 12).

In July 2024, Corder petitioned this Court to vacate the dismissal of his civil claims under Federal Rule of Civil Procedure 60(b)(5). (Dkt. 50). The Court found that, although Corder did not adequately allege involuntariness of his guilty plea, his briefing included statements that, if pleaded properly, could rescue his claim. (Dkt. 59 at 12). Accordingly, on March 28, 2025, the Court granted his motion to vacate dismissal as to the false arrest claim but denied it as to his illegal

search and IIED claims. (Dkt. 59). Corder filed his First Amended Complaint on June 14, 2025, (Dkt. 67), which Defendants moved to dismiss. (Dkt. 82; Dkt. 83). Before parties finished exchanging briefs regarding the Defendants' dismissal, Corder moved for, and the Court granted, leave to file a Second Amended Complaint. (Dkt. 101). In December 2025, the Court clarified that it had granted Corder leave to file the Second Amended Complaint in its entirety. (Dkt. 104). Corder subsequently filed his Second Amended Complaint on February 13, 2026. (Dkt. 108).

Unless noted, the Court draws the following facts from Corder's Second Amended Complaint. On or about March 28, 2008, Sebastian allegedly "coerced" Marcie Nichols—not a party to this lawsuit—into providing the following fabricated testimony to a Cook County Circuit Court Judge, so that the Judge would issue a search warrant for Corder's residence. (*Id.* ¶ 9). Nichols—despite never having lived with Corder—testified to the Judge that she lived at Corder's residence in the sixty days preceding the warrant application. (*Id.* ¶¶ 10, 11). Nichols also testified that, because of this residency, she saw a "revolver handgun" on Corder's dresser in his bedroom. (*Id.* ¶ 10). Nichols' criminal record reveals that, during the time she claimed to be living at Corder's home, she was "picked up" by Chicago Police and, at the time of that arrest, did not provide Corder's residence as her home address. (*Id.* ¶¶ 13-14).

On March 28, 2008, Sebastian secured a search warrant for the revolver and ammunition. (*Id.* ¶ 15). The next day, Sebastian, Walsh, and other CPD officers executed the warrant. (*Id.* ¶ 16). The search did not yield a revolver, and Corder alleges that there was no "revolver . . . present at the home" during the search. (*Id.* ¶ 18). The CPD did, however, find and seize "a .380 semi-automatic [and] ammunition" above a heating duct in the residence's utility room. (*Id.* ¶¶ 19, 22). The utility room was a common area shared amongst six residents, and the police did not find Corder in that room. (*Id.* ¶¶ 20-21). The officers also "seized medicine out of a medicine bottle[.]"

(*Id.* ¶ 22). The state subsequently charged Corder with possession of the firearm and ammunition and possession of cocaine. (*Id.*) Corder did not admit any knowledge of the firearm and ammunition before his arrest and he continued to deny any knowledge or ownership of the firearm and ammunition once arrested. (*Id.* ¶¶ 25-26).

Corder also claims that—on top of Nichols' allegedly coerced and fabricated testimony—the Officers lied about three things in their police report, which they relayed to the Cook County State Attorney's felony review unit: (1) that the CPD discovered the firearm in his residence; (2) that Corder was advised of the charges, received his Miranda warnings, and was transported to the Chicago Police Eighth District for processing; and (3) that, when Sebastian and Walsh asked Corder who the handgun belonged to, Corder stated "It's mine I keep it in the house for protection." (*Id.* ¶¶ 27, 28). The Cook County State Attorney ultimately charged Corder with two felonies: (1) unlawful use of a weapon by a felon and (2) possession of a controlled substance. (*Id.* ¶ 28). Corder ultimately faced a three-count indictment for Unlawful Use of Weapon by Felon. (*Id.* ¶ 29). After his indictment, Corder challenged the validity of the search warrant under *Franks v. Delaware*, 438 U.S. 154 (1979). (*Id.* ¶ 30).

Prior to Corder's *Franks* Hearing, Nichols admitted to Corder's attorney, Calabrese, that two critical elements of the search warrant—that Nichols lived at Corder's residence and that she saw a revolver—were both lies. (*Id.* ¶ 31-33). Nichols also explained to Calabrese that Sebastian threatened her with an arrest for narcotics possession if she refused to provide the false testimony in order for Sebastian to execute a search warrant. (*Id.* ¶ 33-34). By offering this false testimony, Corder posits, Nichols was an "agent or instrument of the state." (*Id.* ¶ 35) (cleaned up).

Nichols, along with five of Corder's family members, were present in state court to testify in support of Corder's pleas for a *Franks* Hearing. (*Id.* ¶ 36-38). Nichols planned to testify about

her previous lies, (*id.* ¶ 36), and his family members intended to affirm that Nichols never lived at Corder's residence. (*Id.* ¶ 38). The testimony did not go as Corder planned. Judge Davy, presiding over Corder's state court case, denied Corder's motion for a *Franks* Hearing, reasoning that *Franks* did not apply in Corder's case because Nichols was a non-governmental affiant, and *Franks* applied only to violations by government agents. (*Id.* ¶ 39).

Corder alleges that, at that hearing, Calabrese did not call Nichols to the stand to explain that she was a governmental informant, nor did Calabrese provide an affidavit recounting Nichols' admissions of pre-search warrant falsified testimony. (*Id.* ¶ 40-41). Corder eventually moved for reconsideration on the Court's denial of the *Franks* Hearing. (*Id.* ¶ 42-43). The state court ultimately denied Corder's motion, but before it did so, Nichols died. (*Id.* ¶¶ 42, 44).

The Defendants' Motion to Dismiss raises several discrepancies between Corder's claims and the criminal court's record with respect to why the court denied Corder's *Franks* hearing. First, that the criminal court record shows that Nichols did, in fact, submit a sworn affidavit to the court on May 19, 2009, stating that she provided Sebastian with information and that she had "once" observed Corder in possession of a revolver handgun. (Dkt. 118 at 3; Ex. 1). Second, Defendants point to Judge Davy's assertion that "[t]here is probably a false statement knowingly and intentionally made and done with disregard for the truth, but it is in the defense affidavit" and that the "[defense was] trying to perpetrate a fraud on [the] court." (*Id.* at 3; Ex. 2 at 19-20).

Corder faced a minimum of six to thirty years in prison. (Dkt. 108 ¶ 45). After he spent 556 days in pretrial detention, the state offered Corder a plea deal: in exchange for a guilty plea to the Aggravated Unlawful Use of Weapon on Person—which is the possession of a loaded firearm "uncased on one's person while on the public way"—the state would reduce his sentence to four years in the Illinois Department of Corrections. (*Id.* ¶¶ 46-50). In search of a lower sentence and

acting on his attorney's advice, Corder pleaded guilty. (*Id.* ¶¶ 51, 53). He claims that he entered into the plea agreement "involuntarily[,]" (*id.* ¶¶ 51-52), and that he did not trust Calabrese's advice based on her failure to call Nichols to testify in his favor during the *Franks* proceedings. (*Id.* ¶ 54). Corder ultimately served 839 days. (*Id.* ¶ 56).

Corder claims that the City of Chicago's "policies and customs were the moving force behind the misconduct" that he experienced and that the CPD failed to "adequately train, supervise, investigate, punish, and discipline prior instances of similar misconduct . . . thereby leading CPD officers to believe their actions will never be scrutinized and, in that way, directly encouraged future constitutional violations" like those Corder suffered. (*Id*. ¶ 57). Corder further alleges that Chicago policymakers have long been aware of—and failed to remedy—the CPD's "policies and customs of not training, supervising, investigating, and disciplining misconduct" of CPD officers, (*id.* ¶ 58), and that the CPD has a "code of silence" that "encourages cover-ups of police misconduct." (*Id.* ¶¶ 68, 108). He substantiates these assertions with information pulled from public reports, jury findings, reports from the United States Attorney's Office for the Northern District of Illinois, and civil complaints that scrutinize CPD policies. (*Id.* ¶¶ 58-106). He further alleges that, since 1986, CPD members—supported by the City of Chicago's policies—have fabricated evidence and/or concealed exculpatory evidence to cause false arrests and convictions of innocent individuals in over a thousand cases. (*Id.* ¶ 112, 114). Corder backs these claims with supposed instances in which the City of Chicago was aware that CPD officers obtained false confessions by torturing detainees. (*Id.* ¶¶ 115-116).

Corder's Second Amended Complaint brings eight counts against the Defendants under 42 U.S.C. § 1983 (Counts I-IV and VI), § 1985 (Count V), and Illinois state law (Counts VII-VIII): (i) a false arrest claim under the Fourth Amendment against Sebastian (*Id.* ¶¶ 118-121); (ii) a

Fourteenth Amendment due process claim for fabricating evidence against Sebastian and Walsh regarding his alleged incriminating statement: that Corder knew of, and owned, the firearm seized in the search, (*Id.* ¶¶ 122-125); (iii) a wrongful pretrial detention claim under the Fourth Amendment against Walsh and Sebastian based on the fabricated reports submitted to the Cook County State Attorney, (*Id.* ¶¶ 126-130); (iv) a *Monell* claim against the City of Chicago, alleging a policy or custom of condoning officers' fabrication of evidence; (*Id.* ¶¶ 131-133); (v) a claim of civil conspiracy against Sebastian and Walsh alleging that they conspired to fabricate evidence, (*Id.* ¶¶ 134-136); (vi) a malicious prosecution claim against Sebastian and Walsh arguing that they initiated the criminal prosecution maliciously and fabricated evidence, (*Id.* ¶¶ 137-141); (vii) a state respondeat superior claim against the city of Chicago, (*Id.* ¶¶ 142-143); and (viii) a state law indemnification claim under the Illinois Tort Immunity Act. (*Id.* ¶¶ 144-145).

The Defendants move to dismiss Corder's Second Amended Complaint in full under Rule 12(b)(6). As to Counts II-VIII, the Defendants argue—among other things—that these claims exceed the scope of this Court's Rule 60(b)(5) Order. (Dkt. 118 at 1-2). With respect to Count I, Defendants argue that Corder fails to state a claim because the officers had probable cause to arrest and prosecute Corder. (*Id.*) The Court addresses these arguments in turn.

## LEGAL STANDARD

"To survive a Federal Rule of Civil Procedure Rule 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *G.T. by & through Hanlon v. Samsung Elecs. Am., Inc.*, 186 F.4th 470, 474 (7th Cir. 2026) (quoting *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible on its face when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gociman v. Loyola Univ. of Chicago*, 41

F.4th 873, 881 (7th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "That said, 'allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.'" *Emerson v. Dart*, 109 F.4th 936, 941 (7th Cir. 2024) (quoting *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). For purposes of a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true and draws all inferences in favor of the nonmoving party. *Gociman*, 41 F.4th at 881. The bar to survive a motion to dismiss is not high, as "dismissal is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (cleaned up).

## ANALYSIS

### I. Counts II-VIII Exceed the Scope of the Court's Rule 60(b)(5) Order.

As a preliminary note, because Corder is proceeding *pro se*, so long as the Court understands what he is attempting to say, it construes his filings liberally. *Korsunskiy v. Gonzales*, 461 F.3d 847, 850 (7th Cir. 2006).

Between both briefs in support of their motion to dismiss, the Defendants point to two reasons as to why the Court should dismiss Counts II-VIII. First, that these Counts exceed the scope of the Court's Rule 60(b)(5) Order. (Dkt. 118 at 6-8). Second, that Corder waived his arguments in opposition to the Defendants' positions regarding whether Counts II-VIII exceeded the scope of the Court's Rule 60(b) order because he "did not genuinely confront the case law and legal arguments raised by defendants." (Dkt. 129 at 3).

The Court first considers the latter argument. Although parties waive arguments if their positions are "underdeveloped, cursory, and lacking supporting authority," *Kondilis v. City of Chi.*, 160 F.4th 866, 874 (7th Cir. 2025) (cleaned up), Corder has provided *some* support and argument

in support of his position. Specifically, he argues that his claims should survive dismissal because the Court allowed him to submit his Second Amended Complaint in its entirety. (Dkt. 128 at 6 (citing Dkt. 108)). Corder therefore did not waive his claims regarding the scope of the Court's 60(b)(5) Order. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (courts view submissions drafted by *pro se* litigants with a less demanding eye than they do for papers drafted by lawyers).

The Court turns now to the Defendants' first argument: that all of Corder's claims aside from the false arrest allegation fall outside the scope of the Court's 60(b)(5) Order. The Defendants point to a smattering of cases to argue that "courts retain broad discretion to define the scope of amendment following a limited reopening under Rule 60(b)." (Dkt. 118 at 7). Thus, they posit, because the Court's 60(b)(5) order was narrow and "explicitly permitted amendment only in the narrow fashion as to the false arrest claim . . . and did not authorize the assertion of brand new claims[,]" only Corder's false arrest claim falls within the scope of the Court's 60(b)(5) Order. (Dkt. 118 at 7). Citing the same cases, Corder argues that because the Court granted him leave to file the Second Amended Complaint in its entirety and as a standalone docket entry, his claims all fall within the Court's 60(b)(5) Order. (Dkt. 128 at 6). Because Counts II-VIII exceeded the narrow and explicitly stated scope of the Court's Rule 60(b)(5) Order, the Court grants their dismissal.

In its 60(b)(5) Order, the Court considered whether Corder could now raise the four claims that he raised in his original Complaint. (Dkt. 59). The Court's considerations were twofold. First, it asked whether each claim was "based" on the since-vacated state criminal conviction and therefore potentially eligible for reactivation, and second, the Court considered whether the eligible claims were barred for any other reason, like untimeliness. (Dkt. 59 at 3-12). The Court determined that Corder could only revive one claim—his false arrest claim. The other three claims were either outside of the scope of Rule 60(b)(5) (the IIED claim) or untimely (the illegal search

claims). (*Id.* at 4-12). Because the Court found in its Rule 60(b)(5) Order that the false arrest claim was the only claim Corder could reassert after his vacated judgment, Corder may bring only that claim now. Indeed, the Court's 60(b)(5) order was explicit that his false arrest claim was the only one of the four claims that Corder could now raise. (*Id*. at 12.) The Court's 60(b)(5) Order was not an invitation for Corder to broaden his claims as he sees fit; it was a narrowly constructed grant as to just his false arrest claim.

As to Corder's argument: the fact that the Court granted him leave to submit his Second Amended Complaint in full does not mean that it opened the door for Corder to add claims not within the scope of the Court's Rule 60(b)(5) Order. Courts are required to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *Johnson v. City of Shelby. Miss*., 475 U.S. 10, 12 (2014). In accordance with this Rule, the Court permitted Corder to amend his complaint; it did not override the fact that Corder's Second Amended Complaint had to stay within the bounds of the Court's 60(b)(5) Order. Accordingly, the Court GRANTS dismissal as to Claims II-VIII.

**II. Count I Sufficiently Alleges a False Arrest Claim.**

The Defendants argue that dismissal is appropriate as to Count I (false arrest) because it fails to state a claim. They insist that "the existence of probable cause [to arrest and prosecute Corder] defeats Corder's false arrest . . . claim[.]" (Dkt. 118 at 8). Largely ignoring Corder's allegations that Nichols' tip was fabricated testimony and the product of coercion, (Dkt. 108 ¶¶ 9-10, 33-34, 43), the Defendants argue that the officers had probable cause to arrest Corder because "Corder was a convicted felon, a firearm was recovered at Corder's home . . . and Nichols [had] told Sebastian [that] Nichols saw Corder with a firearm." (Dkt. 118 at 8-9). Thus, the Defendants posit, the officers searching Corder's home reasonably believed that Corder constructively possessed the weapon. (*Id*. at 9). Moreover, discussing Corder's allegedly falsified inculpatory

statement—that the weapon found was his and that he kept it for protection—the Defendants argue that even if Sebastian *did* falsify the inculpatory statement, the officers had probable cause to arrest Corder because the "undisputed facts independently establish probable cause." (*Id.*)

Arguing that the officers lacked probable cause to arrest him, Corder presents several arguments, including: (1) that because the search of Corder's residence did not produce the revolver, the officers' narrative is not "credible," (Dkt. 128 at 8, 10); (2) that the officers did not have valid probable cause to execute the search warrant because they "fabricated" the probable cause, (*id.* at 8); (3) that the officers cannot show that Corder either constructively or actually possessed the weapon and ammunition, (*id.* at 11), and (4) that the officers "fabricated the report" of having found the .380 weapon and ammunition to "safe face[.]" (*Id.* at 8). Relevant to his first argument, Corder's Second Amended Complaint and memorandum opposing the Defendants' Motion to Dismiss both allege two falsified statements: Nichols' "false statement" that Sebastian coerced her into providing for the warrant, (*Id.* at 8; Dkt. 108 ¶¶ 9-10, 33-34, 43), and Corder's inculpatory statement that he owned the weapon and kept it for self-protection. (Dkt. 128 at 8; Dkt. 108 ¶¶ 27-28). Corder argues that "citizens have a right not to have probable cause fabricated against them" (Dkt. 128 at 8), and that fabrication of probable cause violates "clearly established constitutional rights." (*Id.*) Because Corder alleges (1) that the officers coerced Nichols into fabricating testimony that served as the basis for the search warrant; (2) that his arrest was a product of that that search; and (3) that he subsequently entered into a guilty plea based on Nichols' allegedly false statement and the subsequent fabricated incriminating statement, (Dkt. 108 ¶¶ 9-10, 33-34, 43), Corder alleges sufficient facts to proceed under Count I.

Probable cause is "an absolute defense to any claim under Section 1983 against police officers for wrongful arrest[.]" *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006). "A

police officer has probable cause to arrest a person if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The determination of probable cause is made in the context of the elements of the underlying criminal offense. *Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016). This determination is made from the perspective of "a reasonable person in the position of the officer." *Holland v. City of Chi.*, 643 F.3d 248, 254 (7th Cir. 2011). A report by a single, credible witness will suffice as a basis for this knowledge even if the officer did not witness the crime first-hand. *Woods v. City of Chi.*, 234 F.3d 979, 996 (7th Cir. 2000). Probable cause relies on the common-sense judgment of the officers based on the totality of the circumstances. *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015). This does not mean, however, that an officer has proper probable cause where he manufactured that probable cause. *Alexander v. United States*, 721 F.3d 418, 423 (7th Cir. 2013) ("Knowingly false statements [by a witness, which served as the basis for the criminal defendant's arrest and subsequent prosecution] cannot support a finding of probable cause."); *see also Washington v. Boudreau*, 2022 WL 4599708, at *24 (N.D. Ill. Sept. 30, 2022) (same); *Wilson v. Est. of Burge*, 667 F. Supp. 3d 785, 873 (N.D. Ill. 2023) (one cannot manufacture probable cause by fabricating evidence).

The Court has already reviewed the potential validity of Corder's false arrest claim in its 60(b)(5) Order. (Dkt. 59). As explained, at baseline, to show that his false arrest claim is meritorious, Corder must allege that he was arrested without probable cause. (*Id.*); *Braun v. Village of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022). If, however, Corder's guilty plea was valid, he waived his ability to make this showing. *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *see also*

*White v. City of Chicago*, 2018 WL 1702950 at *3 (N.D. Ill. Mar. 31, 2018) (explaining that, in *Tollett*, the Supreme Court held that "when a defendant pleads guilty he may not later raise claims about depravations prior to his plea," but that he may challenge the "voluntary and intelligent nature" of that plea); (Dkt. 59 at 9-10). Corder must therefore show that his case falls within the falsified evidence exception to the *Tollett* rule, which allows a defendant to challenge "the voluntary and intelligent nature" of the plea. *White v. City of Chicago*, 2018 WL 1702950 at *3; *Tollett*, 411 U.S. at 267. The exception works like this: a party can challenge a guilty plea if it was not entered into voluntarily or intelligently. *Tollett*, 411 U.S. at 267. If the fabricated evidence causes a defendant to give up their liberty and take a guilty plea, then the plea was involuntary and an involuntary plea does not waive claims. *See Saunders v. City of Chicago*, 2014 WL 3535723, at *5 (N.D. Ill. July 11, 2014); *White*, 2018 WL 1702950, at *3; *Tollett*, 411 U.S. at 267; (Dkt. 59 at 11).

Corder's Second Amended Complaint alleges that the CPD officers fabricated probable cause through Nichols' false statement and Corder's alleged post-arrest incriminating statement. Because probable does not exist where an officer or other affiant manufactured it through false statements, *Alexander*, 721 F.3d at 423, Corder's Second Amended Complaint alleges sufficient facts for Count I to survive dismissal. Indeed, the Court may infer causality when a criminal defendant alleges that officers manufactured evidence and that the defendant subsequently pleaded guilty. *See White*, 2018 WL 1702950, at *3; *Saunders*, 2014 WL 3535723, at *5; (Dkt. 59). Unlike Corder's original complaint—in which he did not discuss the guilty plea—Corder's Second Amended Complaint maintains that his "involuntary" plea followed Nichols' falsified statement that Sebastian coerced her into making, (Dkt. 108 ¶¶ 9-10, 33-34, 43), and the officer's allegedly fabricated post-arrest incriminating statement that Corder owned the weapon for self-protection.

(*Id.* ¶¶ 27-28). Corder's Second Amended Complaint further alleges that, because of these false statements, he spent 556 days in pretrial detention and involuntarily entered a guilty plea. (*Id.* ¶¶ 46, 49, 51-52, 55-56). The Court takes no position as to whether his plea was "involuntary." Taking all well-pleaded allegations as true and drawing all reasonable inferences in Corder's favor, however, Corder alleges sufficient facts for Count I to survive Defendants' Motion to Dismiss.

The Defendants offer four arguments as to why the CPD had probable cause to arrest Corder, only one of which addresses Corder's allegation of falsified evidence, and none of which are illuminating. They argue: (1) that the fact that the CPD found the .380 round and not the revolver when executing the warrant does not extinguish probable cause because the CPD's informant—Nichols—was credible and may not have known the difference between the weapons, particularly because she was a drug user, (Dkt. 129 at 6-7); (2) that CPD had probable cause to arrest Corder because they found both a weapon and Corder in Corder's residence (*Id.* at 7); (3) that Corder's own admission that the firearm was found "in his residence," establishes sufficient control of the weapon for probable cause to arrest (*Id.* at 4-5); and (4) that "[e]ven Corder's allegation Sebastian falsified an inculpatory statement does not negate the existence of probable cause when the undisputed facts independently establish probable cause." (Dkt. 118 at 9 (citing *Young v. City of Chicago*, 987 F.3d 641 (7th Cir. 2021)).

Because the success of Corder's claim requires a showing that he entered into a guilty plea after the officers produced falsified evidence, *supra* at 13-14, the Defendants' first three arguments are off base. As to their fourth argument: citing *Young*, the Defendants insist that even if Corder alleges enough facts to show that his guilty plea was based in a falsified inculpatory statement, there was sufficient probable cause to arrest him such that Count I fails to state a claim. In *Young*, the CPD "lawfully stopped Young while he was driving [and found] a gun next to [him] in the

car." *Young*, 987 F.3d at 642. It did "not matter that the police allegedly falsified evidence at the station *later on*—they had all the probable cause they needed from the arrest scene alone." *Id*. at 642 (emphasis added). The Defendants fail to account for the critical difference between *Young* and Corder: in *Young*, the officers had probable cause from the instance, however, Corder alleges that the officers here never had probable cause because they relied on coercion and false testimony from the outset. (Dkt. 108 ¶¶ 9-10, 33-34, 43). Count I may therefore proceed.

**CONCLUSION**

The Court grants Defendants' Motion to Dismiss as to Counts II-VIII and denies the Motion as to Count I.

Virginia M. Kendall
United States District Judge

Date: October 26, 2026